UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                                Case No. 15-81516-WRS
                                                                     Chapter 13
LATOYA BRANTLEY,

      Debtor

LATOYA BRANTLEY,

      Plaintiff                                       Adv. Pro. No. 16-8002-WRS

  v.

UNITED STATES DEPARTMENT
OF EDUCATION, et al.,

      Defendants

## MEMORANDUM DECISION

This student loan dischargeability case is before the Court on the motions to dismiss filed by Defendants United States Department of Education ("USDE") and National Collegiate Trust ("NCT"). (Docs. 24 and 29). For the reasons set forth below, the motions to dismiss are GRANTED and this adversary proceeding is DISMISSED WITHOUT PREJUDICE.

## I. FACTS & PROCEDURAL HISTORY

Plaintiff LaToya Brantley ("Brantley") owes approximately $445,000 in student loan debt. She filed Chapter 7 bankruptcy on October 30, 2015. (Case No. 15-81516, Doc. 1). The Bankruptcy Administrator filed a statement of presumed abuse based on Brantley's income and, on January 20, 2016, filed a motion to dismiss. (Case No. 15-81516, Docs. 14 and 16); *see* 11 U.S.C. §§ 704(b)(2)(A) and 707(b)(2)(A). Brantley filed a motion to convert her case from

Chapter 7 to Chapter 13 and the Court granted her motion on April 5, 2016. (Case No. 15-81516, Docs. 28 and 29). The Court has not yet confirmed a plan in Brantley's Chapter 13 case, but the plan she has proposed would last for fifty-eight months if confirmed and successfully completed. (Case No. 15-81516, Doc. 38).

Brantley filed this adversary proceeding to discharge her student loans on February 4, 2016. (Doc. 1). USDE filed a motion to dismiss on April 6, 2016, arguing that the adversary proceeding was no longer ripe due to Brantley's conversion to Chapter 13. (Doc. 24). The Court held a hearing on April 21, 2016, at which it heard argument from the parties and took the matter under advisement. NCT subsequently filed its own motion joining that of USDE on May 11, 2016. (Doc. 29).

## II. ANALYSIS

In moving to dismiss for lack of ripeness, the Defendants challenge the Court's subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1), incorporated by FED. R. BANKR. P. 7012(b). The Court has statutory subject-matter jurisdiction, 28 U.S.C. §§ 1334(b) and 157(a), Order of Reference of Bankruptcy Matters (M.D. Apr. 25, 1985), as well as statutory adjudicatory power, 28 U.S.C. § 157(b)(2)(I). Moreover, a proceeding to discharge a student loan may be brought at any time. FED. R. BANKR. P. 4007(b). Ripeness, however, implicates the Court's constitutional subject-matter jurisdiction. U.S. CONST. art. III, § 2, cl. 1. "Ripeness has two components: constitutional ripeness and prudential ripeness." Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman), 560 F.3d 1000, 1004 (9th Cir. 2009).

## A. Constitutional Ripeness

The determination of the dischargeability of a debt is essentially a declaratory judgment. "'The constitutional ripeness of a declaratory judgment action depends upon "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."'" Id. at 1005 (quoting United States v. Braren, 338 F.3d 971, 975 (9th Cir. 2003) (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941))). "The issues presented must be definite and concrete, not hypothetical or abstract." Id. (internal quotation marks omitted). "Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy." Id. (internal citation and quotation marks omitted). That said, constitutional ripeness "is more limited in scope than prudential ripeness." Cassim v. Educ. Credit Mgmt. Corp. (In re Cassim), 594 F.3d 432, 440 (6th Cir. 2010).

The Sixth and Ninth Circuits are the only courts of appeals to consider the question of constitutional ripeness in this factual scenario, and both held that a student loan dischargeability suit becomes constitutionally ripe when the debtor files bankruptcy, even in Chapter 13. Id.; Coleman, 560 F.3d at 1005; *cf.* Ekenasi v. Education Res. Inst. (In re Ekenasi), 325 F.3d 541, 547 (4th Cir. 2003) (declining "to adopt a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments"). The Court agrees that this case is constitutionally ripe. Brantley filed bankruptcy with the intention to discharge her student loans and has adverse

-3-

legal interests to the Defendants. Her student loan debts are specific and identifiable, and the legal issues are clear. It is true that Brantley's claim hinges on her actually receiving a discharge, but that contingency is more properly considered under prudential ripeness.[1]

### B. Prudential Ripeness

"Problems of prematurity and abstractness may well present insuperable obstacles to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present." Socialist Labor Party v. Gilligan, 406 U.S. 583, 588 (1972). Known as prudential ripeness, this two-part inquiry considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), *overruled on other grounds by* Califano v. Sanders, 430 U.S. 99, 105 (1977).

### 1. Fitness of the Issues for Adjudication

The Bankruptcy Code excepts student loans from discharge unless repayment would impose an "undue hardship" on the debtor and her dependents. 11 U.S.C. § 523(a)(8). Undue hardship is an exception to the exception of student loans from discharge in bankruptcy. Thus, when a Chapter 13 debtor discharges student loans "it is as part of the regular Chapter 13 discharge, rather than as a separate event." Bender v. Educ. Credit Mgmt. Corp. (In re Bender), 368 F.3d 846, 847 (8th Cir. 2004). Because the discharge of student loans is not a separate event,

---

[1] The Court acknowledges that the Supreme Court has questioned "the continuing vitality" of prudential ripeness. *See* Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2347 (2014). Absent an express abrogation of the doctrine the Court will apply it here, particularly in light of the circumstances of this case.

"the factual question is whether there is undue hardship at the time of discharge, not whether there is undue hardship at the time that a § 523(a)(8) proceeding is commenced." Id. at 848.

Proof of undue hardship under § 523(a)(8) comprises three elements:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loan; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Hemar Ins. Corp. of Am. v. Cox (In re Cox), 338 F.3d 1238, 1241 (11th Cir. 2003) (adopting the standard from Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987)).

This is necessarily a fact-intensive inquiry that contemplates "a projection of the debtor's anticipated post-bankruptcy financial circumstances." Murray v. Educ. Credit Mgmt. Corp. (In re Murray), 2015 WL 3929582, *4 (Bankr. D. Kan. Jun. 24, 2015). Undertaking an inquiry of the debtor's "current" situation four or five years in advance of the actual discharge is unreasonably difficult and would require substantial speculation on the part of the Court. *See, e.g.*, Ekenasi, 325 F.3d at 547-49 (holding that the bankruptcy court clearly erred in finding undue hardship two years before the debtor was scheduled to complete plan payments because its factual findings were speculative); Bender v. Educ. Credit Mgmt. Corp. (In re Bender), 297 B.R. 126, 133 (D. Neb. 2003) (same), *aff'd* 368 F.3d 846. There is a strong possibility that the debtor's circumstances will change, for better or worse, during that period, rendering any prior factual findings both premature and erroneous. Soler v. United States (In re Soler), 250 B.R.

694, 697 (Bankr. D. Minn. 2000); Pair v. United States (In re Pair), 269 B.R. 719, 720-21 (Bankr. N.D. Ala. 2001); Raisor v. Educ. Loan Serv. Ctr. (In re Raisor), 180 B.R. 163, 166-67 (Bankr. E.D. Tex. 1995). Nor does Bankruptcy Rule 4007(b) cure a defect in ripeness. Pair, 269 B.R. at 721; Raisor, 180 B.R. at 167.

The Eleventh Circuit has suggested that undue hardship should be considered at or near discharge. In United States v. Lee, 89 B.R. 250 (N.D. Ga. 1987), the district court addressed a suit to discharge a Health Education Assistance Loan ("HEAL") filed early in a Chapter 13 case.[2] Lee, 89 B.R. at 257. The district court stated:

> [A] HEAL loan may or may not be dischargeable under [11 U.S.C.] § 1328(a) depending on whether *at the time discharge is sought* the requirements of [then-enacted 42 U.S.C.] § 294f(g) have been met. It is premature at this time, therefore, for the court to find that a HEAL loan, like any other unsecured debt provided for in a Chapter 13 plan, is or is not dischargeable under § 1328(a). No debt is dischargeable under § 1328(a) until successful completion of all payments under a Chapter 13 plan.

Id. (emphasis in original). The Eleventh Circuit affirmed "for the reasons stated by the district court. . . ." United States v. Hochman (In re Hochman), 853 F.2d 1547, 1547 (11th Cir. 1988) (per curiam).

---

[2] The version of § 523(a)(8) in effect in 1987 permitted a discharge of student loans without a showing of undue hardship five years after inception of the loan. Cox, 338 F.3d at 1242-43 (citing Education Amendments of 1976, Pub. L. No. 94-482, 90 Stat. 2081, 2141). However, discharge of a HEAL loan in 1987 required, under a now-repealed version of 42 U.S.C. § 294f(g), an additional showing that non-discharge would be "unconscionable." Lee, 89 B.R. at 254 (citing Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, 95 Stat. 357). Thus, the analysis for discharging a HEAL loan in bankruptcy in 1987 was comparable to the undue hardship analysis now employed for all student loans. *See* Lee, 89 B.R. at 255 (applying the "unconscionable" requirement to discharge under 11 U.S.C. § 1328(a)).

-6-

There are also practical considerations for not adjudicating a § 523(a)(8) proceeding early in a Chapter 13 case. Roughly 60% of Chapter 13 cases in this district do not result in a discharge, usually because of the debtor's inability to make the required plan payments for the requisite three or five years. Given the strong possibility that a Chapter 13 case will be dismissed long before discharge can occur, a determination of undue hardship early in the case would likely be rendered unnecessary and irrelevant. It makes little sense to "wast[e] scarce judicial resources in attempts to resolve speculative or indeterminate factual issues." Bender, 368 F.3d at 848. As one bankruptcy court bluntly stated, "this Court is busy enough deciding ripe actions and does not need to waste time deciding cases that are not ripe." Walton v. Sallie Mae Educ. Credit Fin. Corp. (In re Walton), 340 B.R. 892, 894 (Bankr. S.D. Ind. 2006).

In Coleman, the Ninth Circuit concluded that the issue of undue hardship was fit for adjudication substantially in advance of Chapter 13 plan completion, explaining that "fact-intensive inquiries that depend on further factual development may nevertheless be ripe if, as here, that development would do little to aid the court's decision." Coleman, 560 F.3d at 1009. The court compared the undue hardship determination to a motion for relief from the automatic stay, and noted that the second prong of Brunner always requires bankruptcy courts to "speculate on [the] debtor's financial situation years into the future." Id. In light of the considerations elaborated above, the Court does not find this portion of the Ninth Circuit's reasoning persuasive. A motion for relief from the stay is inapposite both in inquiry and scope to a § 523(a)(8) proceeding, and the fact that the second prong of Brunner is inherently speculative does not justify making the other prongs unnecessarily so. While the Court does not hold that an undue hardship determination can *never* be made substantially in advance of a Chapter 13 discharge, the

evidence would have to overwhelmingly favor one side. A quick review of the filings in this proceeding and the underlying bankruptcy suggests this is not such a case.

Based on the reasons discussed, the Court concludes that a determination of whether repayment of Brantley's student loans would be an undue hardship for her is not fit for adjudication at this time.

### 2. Hardship to the Parties

Having determined that this adversary proceeding is not fit for judicial decision, the Court must also consider whether dismissing it without prejudice would work a hardship on the parties.

The Court finds this factor to be inconclusive. While Brantley would understandably want to know whether the Chapter 13 payments she is making will obtain a discharge of her student loans, the Defendants have an equally compelling interest in avoiding potentially unnecessary litigation. Also, the Court is disinclined to keep the proceeding open in perpetual stasis, draining the Court's resources, for five years while Brantley completes her plan payments.

### III. CONCLUSION

Given the infancy of Brantley's Chapter 13 case, an adversary proceeding to discharge her student loans is not ripe. Therefore, the Court will grant the Defendants' motions

-8-

to dismiss without prejudice to Brantley's right to re-file within one year of the date when she is scheduled to complete her plan payments.

Done this 17th day of May, 2016.

United States Bankruptcy Judge

c: All parties